**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| Ameth Santiago-Ríos<br><br>Plaintiff,<br><br>v.<br><br>MSD International GmbH LLC,<br><br>Defendant. | Civil No. 24-1170 (GLS) |

**OPINION AND ORDER**

Before the Court is Defendant MSD International GmbH (Puerto Rico Branch) LLC's motion for summary judgment. Docket. Nos. 51, 52. Plaintiff Ameth Santiago-Ríos opposed Defendant's motion at Docket Nos. 69, 70. Defendant replied at Docket Nos. 82, 83. For the reasons set forth below, Defendant's motion for summary judgment is **GRANTED**.

### I.    Procedural Background

Plaintiff initiated this action in the Court of First Instance of Puerto Rico, alleging wrongful termination and discrimination, and seeking damages. Docket No. 1. Defendant subsequently removed the case to this Court on diversity grounds. In his Amended Complaint, Plaintiff desisted of the discrimination claim and claimed that, after twenty-five years as a chemical analyst, he was unjustly dismissed from his position in violation of Puerto Rico law. Docket No. 12. Plaintiff alleged that he had never been reprimanded for his testing practices and that Defendant's proffered reason for his termination— his alleged failure to contemporaneously record dissolution test data in an electronic notebook— was pretextual and insufficient to establish just cause. Id. Although Plaintiff acknowledged "anticipating" certain data entries, he contended that he was not adequately trained to use the electronic system, and that such "anticipation" did not compromise data integrity so long as the final data recorded was accurate. Id. at p. 6. Based on these allegations, Plaintiff argued that his termination constituted a reckless violation of the Puerto Rico Unjust Dismissal Act, Law 80 of May 30, 1976, as amended, P.R. LAWS ANN. tit. 29 § 185a et seq. ("Law 80") and seeks the payment of damages, accrued benefits, unpaid wages, and attorney's fees by Defendant.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

Defendant moves for summary judgment arguing that, pursuant to the undisputed material facts, Plaintiff's actions constituted just cause for termination. Docket Nos. 51, 52. Defendant claims that Plaintiff failed to properly conduct certain dissolution tests by falsely certifying that required laboratory procedures had been completed before being carried out. Docket No. 52 at p. 4. According to Defendant, this conduct violated internal policies designed to ensure compliance with federal and other regulatory requirements and warranted termination.

Plaintiff counters that inadequate training and the failure of multiple reviewing employees to detect any alleged errors give rise to genuine issues of material fact on the matter of just cause. Docket Nos. 69, 70. Plaintiff emphasizes that four separate employees reviewed his work without identifying any alleged deficiencies. He contends that they all lacked adequate training, which explains why Plaintiff and the four other employees failed to comply with Defendant's testing standard. Docket No. 70 ¶ 17. In the alternative, Plaintiff argues that Defendant acted arbitrarily by treating the other four employees more favorably. Id. ¶ 16. In reply, Defendant argues that Plaintiff's opposition fails to comply with Local Rule 56(c). Defendant claims that Plaintiff admitted most of its statements of material facts and failed to contest the rest when he did not cite specific evidence in the record to sustain his denials, as required by Local Rule 56(c). Docket No. 82. Defendant further contends that Plaintiff's additional statements of facts are not to be considered because they are not supported by references to the evidence in the record. Id. Finally, Defendant asserts that Plaintiff improperly sought to manufacture a factual dispute by submitting a "sham affidavit," intended to change his deposition testimony. Id.

## II.    Legal Standard

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is warranted when the moving party demonstrates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute is considered genuine if "a reasonable jury, drawing favorable inferences, could resolve it in favor of the nonmoving party." Velázquez-Pérez v. Developers Diversified Realty Corp., 753 F.3d 265, 270 (1st Cir. 2014) (citation omitted). A fact is "material" if it potentially affects the outcome of the suit. American Steel Erectors, Inc. v. Local Union No. 7, 536 F.3d 68, 75 (1st Cir. 2008). A party moving for summary judgment bears the burden of proving that there are no genuine issues of material fact and that judgment as a matter of law is warranted. Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970). The moving party "may affirmatively produce evidence that negates an

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

essential element of the non-moving party's claim" or "point to evidentiary materials already on file . . . that demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial." Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "[I]f the summary judgment record satisfactorily demonstrates that the plaintiff's case is, and may be expected to remain, deficient in vital evidentiary support, this may suffice to show that the movant has met its initial burden." Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (citing Carmona, 215 F.3d at 133).

The non-movant must demonstrate "through submissions of evidentiary quality, that a trial worthy issue persists." See Iverson v. City of Bos., 452 F.3d 94, 98 (1st Cir. 2006). However, when the non-movant bears the ultimate burden of proof at trial, the non-movant may not "rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). In evaluating a motion for summary judgment, the court must view "the record in the light most favorable to the nonmovant and must make 'all reasonable inferences in that party's favor.'" Espacio Residential, LLC v. Gómez-Sánchez, 2023 WL 3548974, at *2 (D.P.R. 2023) (quoting García-García, 878 F.3d at 417). But while the Court draws reasonable inferences from the record in the light most favorable to the non-movant, it casts aside and ignores "conclusory allegations, improbable inferences, and unsupported speculation." See García-García v. Costco Wholesale Corp., 878 F.3d 411, 417 (1st Cir. 2017) (internal quotations and citations omitted).

### III.    Uncontested Facts

### a.    Plaintiff Failed to Comply with Local Rule 56(c)

Local Rule 56 requires that a motion for summary judgment be supported by a "separate, short, and concise" statement of material facts which the moving party deems present "no genuine issue of material fact to be tried." Local Rule 56(b). It also requires that a party opposing a motion for summary judgment "submit with its opposition a separate, short, and concise statement of materials facts." Local Rule 56(c). The rule is clear in that "[t]he opposing statement shall admit, deny or qualify the facts supporting the motion for summary judgment by reference to each numbered paragraph of the moving party's statement of material facts." Id. And that, "[u]nless a fact is admitted, the opposing statement shall support each denial or qualification by a record citation as required by this rule." Id. The rule allows for the opposing statement to contain a separate section of additional facts (numbered and supported by record citation) but only after the

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

opposing party has first complied with the requirement to admit, deny or qualify each of the movant's proposed facts with corresponding numbered responses. Id. Local Rule 56(e) then provides that any fact in a supporting or opposing statement of material facts, if supported by record citation, "shall be deemed admitted unless properly controverted […]. The court shall have **no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of facts**." Id. (emphasis added).

Local Rule 56 acts as a gatekeeper when the nonmoving party fails to provide sufficient evidence to show that a genuine issue of material fact exists or when it rests on "mere allegation or denials of the pleadings." López-Hernández v. Terumo Puerto Rico LLC, 64 F.4th 22, 26 (1st Cir. 2023). As such, when the non-moving party fails to properly controvert supported factual averments submitted by the movant, the Court has discretion to deem those facts admitted. Id. This so-called "anti-ferret rule" seeks to prevent shifting the burden of searching for factual disputes to the Court. Id. The First Circuit has been abundantly clear that the parties ignore Local Rule 56 "at their peril." Id. (citing Mariani-Colón v. Dep't of Homeland Sec. ex. rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007)); Dixon-Tribou v. U.S. Dep't of Veterans' Affairs, 2023 WL 7528515, at *1, n.1 (1st Cir. Nov. 14, 2023) (affirming summary judgment and stressing the importance of complying with Local Rule 56).

In support of their motion for summary judgment, Defendant submitted a Statement of Uncontested Material Facts at Docket No. 52. Plaintiff filed a counterstatement of material facts, admitting most of Defendant's assertions while attempting to qualify or deny others. Docket No. 71. However, Plaintiff failed to comply with Local Rule 56. In most instances, Plaintiff's "Statement of Uncontested Material Facts" attempts to contradict Defendant's proposed facts by offering his own characterization of events and conclusions without making reference to evidence in the record.[1] The Court is not required to ferret through the record in search of evidence that supports purported factual disputes. Accordingly, to the extent Plaintiff has not complied with Local Rule 56(c), Defendant's properly supported facts at Docket No. 52 are deemed admitted.

---

[1] For instance, Plaintiff attempted to contest Defendant's Statement of Uncontested Material Facts at Docket No. 52 ¶ 14, in which Defendant asserted that it had several "Standard Operating Procedures" to establish instructions and steps for their manufacturing and laboratory operations to comply with relevant federal, international and local regulatory standards, by simply arguing (without any reference to evidence) that Defendant "arbitrarily enforces" those Standard Operating Procedures. Docket No. 71 at p. 3.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

See Cortés-Díaz v. Merk Sharp & Dohme, 2021 WL 4513714, at *1 (D.P.R. Sept. 30, 2021) (non-movant's opposition to proposed facts failed to comply with Local Rule 56 because their "denials and qualifications simply repeat [non-movant's] general theory, allegations, and legal conclusions."); see also Mariani-Colón, 511 F.3d at 219 (upholding order deeming movant's statement of facts admitted when opposing party did not admit, deny, or qualify but instead submitted an alternate statement of facts).

### b.    Plaintiff Attempted to Alter Deposition Testimony with a Sham Affidavit

Defendant argues that Plaintiff attempted to alter his original deposition testimony by submitting a "sham affidavit" in support of his statement of additional facts. Docket No. 82 at p. 6. Defendant points to the sworn statement included at the end of Plaintiff's opposition to summary judgment, in which Plaintiff declares that the contents of the filing were "prepared and drafted by the undersigned attorney based on the information [Plaintiff] provided in the firm belief of its truthfulness." See Docket No. 69-1 at p. 39.

Under Rule 56(c)(4) of the Federal Rules of Civil Procedure, an affidavit or declaration used to oppose summary judgment must be based on personal knowledge and must set forth facts that would be admissible in evidence. Although a party is permitted to elaborate or clarify deposition testimony through an affidavit, the party may not defeat summary judgment by simply submitting a contradictory sworn statement without explaining or resolving the contradiction between the statement and prior testimony under oath. Pérez-Maspons v. Stewart Title Puerto Rico, Inc., 208 F.Supp.3d 401, 407 (D.P.R. 2016) (establishing that parties may explain or clarify prior testimony elicited by opposing counsel during a deposition); Cleveland v. Pol'y Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) ("a party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting his or her own previous sworn statement . . . without explaining the contradiction or attempting to resolve the disparity."). As such, the sham affidavit doctrine, "forbids a party opposing summary judgment from submitting an affidavit contradicting prior testimony solely to create an issue of fact." Pérez-Maspons, 208 F.Supp.3d at 40; Orta–Castro v. Merck, Sharp & Dohme Química P.R., Inc., 447 F.3d 105, 110 (1st Cir. 2006) (An affidavit that is simply "an attempt to manufacture an issue of fact in order to survive summary judgment" is not admissible.). In considering the admissibility of such statements, "personal knowledge is the touchstone." Pérez v. Volvo Car Corp., 247 F.3d 303, 315 (1st Cir. 2001) (citation omitted). Such personal knowledge "must concern facts as opposed to conclusions, assumptions, or surmise[,]"

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

as "[w]ithout any specific factual knowledge to support a statement, it is a mere conclusion that cannot serve as probative evidence." Volvo Car Corp., 247 F.3d at 316; Reynolds v. Steward St. Elizabeth's Med. Ctr. of Boston, Inc., 364 F. Supp. 3d 37, 57 (D. Mass. 2019). Once the Court has identified a "sham affidavit," it does not have to "specifically enumerate each contradiction between a party's prior testimony and later filed affidavit in order to disregard the evidence." Pérez-Maspons, 208 F. Supp. 3d at 408.

Plaintiff's sworn statement in support of his additional statements of facts offers a generalized certification indicating that his opposition was "prepared and drafted" by counsel based on information he purportedly provided "in the firm belief of its truthfulness." That is, Plaintiff's statement is merely a blanket and general assertion about events he may have discussed with counsel. But affidavits submitted in support of facts at summary judgment stage must contain specific factual averments grounded in the affiant's personal knowledge and must constitute evidence admissible at trial. González v. Baxter Sales & Distribution Corp., et. al., 2010 WL 3529246, at 5-6 (D.P.R. 2010) ("affidavits must contain specific factual information based on the party's personal knowledge"). Plaintiff's affidavit does not identify which statements are based on his personal knowledge, making it impossible for the Court to evaluate whether the evidence would be admissible at trial. Neither does the affidavit provide the necessary factual details to support the assertions made, nor does it explain the contradictions with his prior testimony under oath. Instead, it relies on a broad, conclusory endorsement of counsel's drafting, leaving the Court unable to discern whether the proposed additional facts are grounded in personal knowledge or merely reflect general approval of his attorney's arguments. Courts have consistently held that such generalized and unsupported statements, particularly those based on belief, speculation, or hearsay, lack probative value at the summary judgment stage. Volvo Car Corp., 247 F.3d at 316. Without specific factual support or an explanation as to why he is now contradicting his prior testimony under oath, Plaintiff's additional facts at Docket No. 69 amount to no more than conclusory allegations and must be disregarded.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

### c.       Facts Deemed Admitted by the Court

After examining the parties' submissions but having disregarded arguments and conclusory statements in the parties' statements of fact,[2] the Court finds that the following material facts are not in dispute.

1. Defendant is a foreign limited liability company authorized to do business in Puerto Rico as a "branch" with a pharmaceutical manufacturing facility located in Las Piedras, Puerto Rico. Defendant's Statement of Uncontested Material Facts at Docket No. 52 ("DSUMF") ¶ 1; Docket No. 1-3 at p. 1.

2. Defendant's manufacturing process is highly regulated by the U.S. Drug and Food Administration ("FDA"), the U.S. Environmental Protection Agency ("EPA"), and other local, federal, and international agencies. DSUMF ¶ 6; Docket No. 52-1 ¶ 12.

3. Non-compliance with federal law and regulations—including those enforced by the FDA and EPA governing the manufacture of healthcare and pharmaceutical products—may expose Defendant and its officers to civil and criminal penalties. DSUMF ¶ 10; Docket No. 52-1 ¶ 16.

4. Among the relevant regulatory standards that Defendant must comply with are the Good Manufacturing Practices ("GMPs") and Good Documentation Practices ("GDPs"), which incorporate FDA regulations and standards. DSUMF ¶ 7; Docket No. 52-1 ¶ 13.

5. The FDA requires that the information and data collected and documented (or recorded) during laboratory and manufacturing operations be performed in a manner that is attributable, legible, contemporaneous, original, and accurate. These standards are collectively referred to as the "ALCOA principles" and are intended to ensure that regulated entities can demonstrate compliance with applicable GMPs and GDPs in the event of an audit by the FDA or other regulatory authorities. DSUMF ¶ 8; Docket No. 52-1 ¶ 14.

6. Defendant also developed a series of internal documents known as the "Standard Operating Procedures" ("SOPs"), which set forth the mandatory instructions governing all manufacturing and laboratory processes conducted at its facilities DSUMF ¶ 13; Docket No. 52-1 ¶ 20.

---

[2]       While Defendant included 213 statements of facts, and Plaintiff included 20 additional statements of facts, not all are material to the issues presently before the Court.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

7. The purpose of the SOPs is to ensure that Defendant's operations comply with the relevant regulatory requirements established in the GMPs, GDPs and ALCOA principles. DSUMF ¶ 14; Docket No. 52-1 ¶ 21.

8. Defendant requires that its employees know and comply with its SOPs, as well as the relevant GMPs, GDPs, and ALCOA principles. DSUMF ¶ 15; Docket No. 52-1 ¶ 22, Docket No. 67-1 at pp. 15-17, 26.

9. Plaintiff worked for Defendant from March 1, 1999, until he was terminated on February 27, 2024. DSUMF ¶ 17; Docket No. 52-1 ¶ 31.

10. At the time of termination, Plaintiff held the "Chemical Analyst II" position at Defendant's Las Piedras facility. DSUMF ¶ 19; Docket No. 52-1 ¶ 31.

11. Plaintiff knew that the ALCOA principles, SOPs, GMPs, and GDPs were in place to ensure compliance with the FDA and other regulatory agencies' requirements for the manufacture of medication. DSUMF ¶ 16; Docket No. 67-1 at pp. 11-13.

12. Plaintiff knew he had to comply with these regulations and Defendant's policies as part of his role as Chemical Analyst II. DSUMF ¶ 20 at Docket No. 52; Docket No. 67-1 at pp. 7, 17.

13. Plaintiff had access to an electronic copy of Defendant's employee handbook, which outlined its policies, rules of conduct, and disciplinary actions. DSUMF ¶ 23; Docket No. 67-1 at pp. 22-23.

14. Defendant's employee handbook set forth a series of violations which could result in disciplinary measures, including employment termination, such as failure to comply with the GMPs, GDPs, and SOPs; the falsification or alteration of company documents; and errors arising from the negligent or careless performance or the omission of job responsibilities. DSUMF ¶ 25; Docket No. 67-2 at pp. 15-19.

15. During his employment, Plaintiff was trained by Defendant on its SOPs, GDPs, GMPs, and the ALCOA principles. DSUMF ¶ 32; Docket No. 67-1 at p. 22.

16. Plaintiff was trained as to SOP-4413 (Good Documentation Practices) ("SOP-4413"), SOP-4203 (Electronic Notebook (ELN) Documentation and Review of Analytical Data) ("SOP-4203"), and SOP-4468 (Laboratory Documentation) ("SOP-4468"). DSUMF ¶ 33; Docket No. 52-1 ¶ 33; Docket No. 67-1 at pp. 27, 35, 41.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

17. Plaintiff understood that the ELN, including its checklists, constituted controlled documentation subject to applicable SOPs. DSUMF ¶ 37; Docket No. 67-1 at pp. 33-34, 67-68.[3]

18. Under SOP-4413, SOP-4203, and SOP-4468, employees were required to: (1) accurately document data; (2) record observations and raw data contemporaneously (i.e. at the time each task was performed);[4] and (3) refrain from recording or signing any document before completing the corresponding activity. DSUMF ¶¶ 38, 39, 47, 53; Docket No. 53-1 at pp. 4-6; Docket No. 53-2 at pp. 9, 17; Docket No. 53-3 at pp. 3, 10.

19. Plaintiff knew that these requirements applied to all ELN entries, including dissolution testing of Atozet. DSUMF ¶¶ 35, 42, 55; Docket No. 67-1 at pp. 35-37, 49-58.

20. By June 2023, dissolution tests for Atozet tablets were recorded in the ELN. DSUMF ¶ 35; Docket No. 67-1 at p. 58.

21. Plaintiff was trained in the use of the ELN and in documenting laboratory procedures in compliance with ALCOA principles, GMPs, and related guidelines. He understood that saving an ELN entry was equivalent to signing a document and certified that the information recorded was accurate and completed in accordance with applicable requirements. DSUMF ¶¶ 58, 59; Docket No. 67-1 at p. 34, 38, 47-48.

22. Atozet is a pharmaceutical product used to lower cholesterol and triglyceride levels on patients to help prevent heart disease, angina (chest pain), strokes, and heart attacks, among other serious health conditions. DSUMF ¶ 36; Docket No. 52-1 ¶ 36.

23. Plaintiff knew that the dissolution test of the Atozet tablet was important because it replicated the behavior, reaction and dispersing of the active ingredients of the medication in a patient's body, upon consumption. DSUMF ¶ 69; Docket No. 67-1 at pp. 59-60.

---

[3]   Plaintiff attempts to contest the fact that he admitted the data was being recorded by arguing that the ELN was not a controlled document or, if it was, he was improperly trained as to its use. Not only does Plaintiff fail to provide evidentiary support for his contention, but his assertion runs contrary to his own deposition testimony in which he admitted the ELN constituted controlled documentation subject to applicable SOPs. See Docket No. 67-1 at p. 34.

[4]   SOP-4468 defines "raw data" as "[t]he original or a representation of the original record, of an observation or an event (e.g. testing)." Docket No. 53-3 at p. 8.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

24. On December 14, 2023, Plaintiff performed a dissolution test on four (4) Lots of Atozet medication and was required to document the experiment data in the ELN checklist. DSUMF ¶ 96; Docket No. 52-1 ¶ 35.

25. Plaintiff documented and certified in advance having performed the entire dissolution test for all four Lots of Atozet tablets before he executed the tasks. DSUMF ¶ 102; Docket 67-1 at p. 90.

26. Plaintiff admitted that he had pre-filled the ELN checklist with information indicating that he had already completed several steps of the procedure before he had carried out those actions. Specifically, he had pre-recorded temperatures for all six (6) vessels across the four (4) Lots and filled out other testing related data ahead of time. DSUMF ¶ 104; Docket No. 67-1 at pp. 83-89; Docket No. 53-4 at pp. 2-4.

27. On December 15, 2023, Yadira Vázquez, another Chemical Analyst, reviewed Plaintiff's data recorded in the ELN History Pane and noticed that Plaintiff had documented all the necessary steps in the ELN checklist before he started the dissolution test for the four Lots of Atozet tables. DSUMF ¶ 117; Docket No. 52-1 ¶ 41.

28. In light of Vázquez's findings, the dissolution test performed by Plaintiff was discarded and repeated by another Chemical Analyst on the next working day. DSUMF ¶ 120; Docket No. 52-1 ¶ 44; Docket No. 67-1 at p. 105.

29. Vázquez reported her findings to her superiors, which ultimately prompted a Human Resources investigation into Plaintiff's conduct. Plaintiff was subsequently placed on paid suspension pending the outcome of the investigation. DSUMF ¶¶ 118-119; Docket No. 52-1 ¶¶ 42-43.

30. Before December 14, 2023, Plaintiff had been subjected to multiple disciplinary actions for violating company policies. DSUMF ¶ 166; Docket 52-1 ¶ 60.

31. On June 30, 2003, Plaintiff received a ten-day suspension from work and pay, and a demotion from "Lab Supervisor" to "Chemist II," following a formal complaint by a female co-worker alleging that he had made improper, disrespectful, and offensive remarks. DSUMF ¶ 179; Docket No. 52-4.

32. On October 16, 2008, Plaintiff received a disciplinary warning due to a formal complaint filed by another female co-worker pursuant to Defendant's Workplace Discrimination and Harassment Policy, alleging that Plaintiff had engaged in unwelcomed approaches. DSUMF ¶ 175; Docket No. 67-11.

33. On July 19, 2018, Plaintiff received a warning for incurring in various violations to established procedures, which resulted in human error that

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

required that Defendant repeat the procedures. DSUMF ¶ 171; Docket No. 67-10.

34. On December 14, 2021, Plaintiff was suspended from work for two (2) weeks for violating company policies prohibiting employees from smoking on company premises. DSUMF ¶ 167; Docket No. 67-9.

35. Plaintiff signed each disciplinary memorandum and never commented or escalated the disciplinary actions with Human Resources or higher-level management within the company. DSUMF ¶ 183; Docket No. 67-1 at pp. 122, 124, 128, 129.

36. Based on the findings of Defendant's investigation into Plaintiff's conduct on December 14, 2023, Senior Human Resources Specialist Jesús Domínguez ("Domínguez") and Laboratory Supervisor at the Operations Department Lillian Grau ("Grau") concluded that Plaintiff had committed multiple data integrity breaches and violations to SOPs, GMPs, GDPs and ALCOA principles. They further determined that this noncompliance exposed Defendant to potential regulatory risk and that termination of employment was thus the appropriate disciplinary action. DSUMF ¶ 184; Docket No. 52-1 ¶ 54.

37. It was confirmed that Plaintiff was properly trained on applicable SOPs, GMPs, GDPs and ALCOA principles and the process to perform the dissolution test and the corresponding documentation of the process in the ELN checklist. DSUMF ¶ 184; Docket No. 52-1 ¶ 54.

38. The employee handbook establishes Defendant's discipline policy, under which the application of a corrective disciplinary action to an employee depends on the nature/type of violation committed by the employee and other relevant factors or circumstances, such as, for example: the seriousness of the violation or offense; the impact on the business unit or department; the impact on Defendant's reputation; the employee's disciplinary history. DSUMF ¶ 186; Docket No. 52-1 ¶ 27; Docket No. 67-2 at pp. 18-19.

39. Defendant's rules of conduct warn that, due to the nature and seriousness of Defendant's business, failure to comply with GMPs, GDPs, SOPs or other government regulations constitutes a serious violation of company values and its rules of conduct, which could lead to termination of employment even on the first offense, depending on the concurrence of aggravating or mitigating circumstances. DSUMF ¶ 188; Docket No. 67-1 at p. 26; Docket No. 67-2 at p. 15, 19.

40. These rules of conduct further prohibit falsification or alteration of any document belonging to Defendant and warn that an employee's noncompliance with such rules may result in employment termination. DSUMF ¶ 189; Docket No. 67-2 at p. 17.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

41. Plaintiff knew that failing to comply with applicable SOPs, GMPs, GDPs, or ALCOA principles was a serious violation that would result in his termination. DSUMF ¶ 197; Docket No. 67-1 at pp. 11, 26.

42. Plaintiff was terminated from employment effective on February 27, 2024, after Defendant concluded that, on December 14, 2023, he failed to properly perform the dissolution test for four (4) Lots of Atozet tablets and to document the data contemporaneously as required by applicable SOPs, GMPs, GDPs, and ALCOA principles. DSUMF ¶ 199; Docket No. 52-1 at ¶¶ 59, 62.

43. The investigation further revealed that Plaintiff had engaged in similar violations during prior dissolution tests. As a result, Defendant expanded its investigation to include those earlier tests and found that four other Chemical Analysts had reviewed Plaintiff's ELN checklists but failed to identify the violations. These Chemical Analysists were Aida Rodriguez ("Rodríguez"), Jose Boria ("Boria"), Anabel Rivera ("Rivera"), and Betsy Álvarez ("Álvarez"). DSUMF ¶¶ 165, 202-204; Docket No. 52-1 ¶¶ 63-65.

44. As part of the investigation, Domínguez and Grau interviewed the four Chemical Analysts and concluded that they failed to review all versions of the ELN checklist that Plaintiff saved in the History Pane, as required by SOP-4203. DSUMF ¶ 205; Docket No. 52-1 ¶ 65.

45. Rodríguez, Boria, Rivera and Álvarez had not faced prior disciplinary actions. DSUMF ¶ 207; Docket No. 52-1 ¶ 67.

46. Defendant concluded that these individuals had not committed the same violations as Plaintiff, as they did not directly perform the dissolutions tests and did not breach the contemporaneous documentation requirement by recording data in the ELN before the tasks were completed. DSUMF ¶ 208; Docket No. 52-1 ¶ 68.

47. Defendant concluded that Rodríguez, Boria, Rivera and Álvarez failed only to fulfill their responsibilities as second scientific reviewers by failing to thoroughly verify each version of the ELN checklist saved by Plaintiff in the ELN History Pane (audit trail), as required by SOP-4203. DSUMF ¶ 209; Docket No. 52-1 ¶ 69.

48. At the conclusion of the Human Resources investigation, Defendant placed Rodríguez, Boria, Rivera and Álvarez on a one (1) month suspension from work and salary with a final written warning. DSUMF ¶ 213; Docket No. 52-1 ¶ 73.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

## IV.    Discussion

Law 80 is part of Puerto Rico's labor legislation, designed to protect employees from unjust termination by "[imposing] a monetary penalty on employers who dismiss employees without just cause." Otero-Burgos v. Inter American University, 558 F.3d 1, 7 (1st Cir. 2009). It applies to those employees working for compensation "in commerce, industry, or any other business or workplace" without a fixed term. P.R. LAWS ANN. tit. 29 § 185a. This framework limits the "at-will employment" doctrine, which allows employers to sever the employment relationship at any time for any reason, by requiring "just cause" for termination and imposing a statutory severance remedy when an employee is discharged without such cause. Otero-Burgos, 558 F.3d at 7. The severance calculation is the exclusive remedy under the statute. See Rodríguez v. Eastern Air Lines, Inc., 816 F.2d 24, 27 (1st Cir. 1987) (reinstatement is not available under Law 80). Law 80 does not proscribe an employer's ability to dismiss an employee. Segarra Rivera v. International Shipping Agency, Inc., 208 P.R. Dec. 964, 982 (2022).[5] Rather, employer liability hinges on whether the employer can articulate "a considered, non-arbitrary reason for an employee's termination that bears some relationship to the business' operation." Pérez v. Horizon Lines, Inc., 804 F.3d 1, 9 (1st Cir. 2015).

Law 80 provides a non-exhaustive list of conduct that may constitute just cause, including:

(a) That the employee engages in a pattern of improper or disorderly conduct.

(b) That the employee engages in a pattern of deficient, inefficient, unsatisfactory, poor, slow or negligent performance. **This includes noncompliance with the employers' quality and safety rules and standards**, low productivity, lack of competence or ability to perform the work at reasonable levels as required by the employer and repeated complaints from the employer's customers.

(c) **The employee's repeated violations of the reasonable rules and regulations established for the operation of the establishment, provided, that a written copy thereof has been timely furnished to the employee.**

P.R. LAWS ANN. tit. 29 § 185b (emphasis added).

In short, misconduct, poor performance, and repeated violations of reasonable rules can all justify termination. García v. Bristol-Myers Squibb Co., 535 F.3d 23, 31 (1st Cir. 2008) (deficient performance constitutes a legitimate, no-discriminatory reason for employment termination);

---

[5]    Certified translation available at Docket No. 67-13.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

Hoyos v. Telecorp Commc'ns, Inc., 488 F.3d 1, 6 (1st Cir. 2007) ("Violations of an employer's instructions may constitute good cause . . . as may improper conduct.").

Naturally, employers are allowed to establish reasonable workplace rules for their employees. Secretario del Trabajo v. I.T.T., 108 P.R. Dec. 536, 8 P.R. Offic. Trans. 564, 568 (1979); Vargas v. Royal Bank of Canada, 604 F. Supp. 1036, 1040 (D.P.R. 1985). An employer's norms are reasonable when they are "deem[ed] necessary for the good operation of the enterprise." Secretario del Trabajo v. I.T.T., 8 P.R. Offic. Trans. at 568. Violations of an employer's rules may warrant termination, especially when the employee has been informed of them and fails to comply. Rivera Rosa v. Citibank, N.A., 567 F. Supp. 2d 289, 300 (D.P.R. 2008). Although Law 80 contemplates repeated violations as a justification for termination for cause, even a single violation may justify termination when "an initial offense is so serious, or so reflects upon the employee's character, that the employer reasonably should not be expected to wait for future occurrences." Hoyos, 488 F.3d at 6 (citing González v. El Día, Inc., 304 F.3d 63, 75 (1st Cir. 2002).

The applicable evidentiary burden-shifting framework in Law 80 depends on the date of employment. Prior to the enactment of the Labor Transformation and Flexibility Act, Law 4 of January 26, 2017, P.R. LAWS ANN. tit. 29 §§ 121-124, an employee's claim triggered a presumption of unjust dismissal and required the employer to prove just cause by a preponderance of the evidence. Echevarría v. AstraZeneca Pharmaceutical LP, 856 F.3d 119, 140 (1st Cir. 2017). The Act removed from Law 80 this presumption of illegality in the employer action. Alemañy Ramírez v. ICF Inc., LLC, 806 F. Supp. 3d 213, 222 (D.P.R. 2025). "Consequently, the old reversal in burden of proof, whereby the employer had to prove its innocence, has been eliminated in favor of the civil rule default placing the burden of proof on the plaintiff." Id. However, "[e]mployees hired before the effective date of [the Act] shall continue to enjoy the same rights and benefits they enjoyed before." P.R. LAWS ANN. tit. 29 § 121a. Therefore, the applicable burden of proof in a given case will depend on the date on which the employee at issue was hired. Cortés-Díaz v. Merk Sharp & Dohme, 2021 WL 4513714, at *7 (D.P.R. Sept. 30, 2021); Alemañy Ramírez, 805 F. Supp. 3d at 222 n. 3 (finding that the new framework applied because the employee was hired after 2017). Because Plaintiff's employment predates the 2017 amendment, the original framework governs here: Defendant bears the burden of establishing that Plaintiff's termination was justified. However, once the employer articulates a legitimate basis for the discharge, the employee is still obliged to produce evidence supporting his claims. Segarra Rivera, 209 P.R. Dec. at 987.

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

Defendant has clearly met its burden and rebutted the statutory presumption of illegality. The undisputed record shows that Defendant operates within a highly regulated pharmaceutical industry subject to strict compliance requirements, including adherence to GDPs, GMPs and ALCOA principles. Docket No. 52-1 ¶¶ 12-14. To meet these obligations, Defendant has implemented internal procedures, such as SOPs, which require the contemporaneous recording of laboratory data. Docket No. 52-1 ¶¶ 20, 21. Defendant's employee handbook states that failure to comply with these regulatory and internal norms could result in dismissal even after the first offense. Docket No. 67-1 at p. 26; Docket No. 67-2 at pp. 15, 19. These policies are plainly reasonable as they are directly tied to regulatory compliance and the integrity of Defendant's operations. And Plaintiff acknowledged both his familiarity with these requirements and his training in them. Docket No. 67-1 at p. 22. He even admitted during deposition that he incurred in the charged conduct: that he recorded data in the ELN before performing the corresponding tasks during the December 14, 2023, dissolution tests. Docket No. 67-1 at p. 88. By incurring in this conduct, Plaintiff effectively certified the accuracy and completion of procedures that had not yet been performed, in direct contravention of applicable protocols. Such conduct constitutes a clear violation of both internal policies and governing regulatory standards. And Plaintiff was aware of this. Docket No. 52-1 ¶ 14; Docket No. 67-1 at pp. 28-29, 43-44, 55-58. See Cortés-Díaz, 2021 WL 4513714, at *9 ("backdating an entry could constitute" just cause if such action is prohibited by employer's norms). The record also shows that this violation of reasonable employment rules was not an isolated incident for Plaintiff. Plaintiff had been previously demoted from his position as Laboratory Supervisor to Chemical Analyst II as part of a disciplinary action resulting from a formal complaint by a female coworker. Docket No. 52-4. Plaintiff had also faced disciplinary actions for violating several other company policies, including those related to sexual harassment and a prior admonition arising from human error in the performance of different laboratory tests. Docket Nos. 67-9, 67-10, 67-11.

Plaintiff has failed to present admissible evidence to rebut this showing. In his opposition, Plaintiff argues that he did not receive proper training as to the ELN checklist and that the ELN is not a "controlled document" subject to applicable SOPs and ALCOA principles. See Docket No. 70. But these arguments are unavailing both because these were not properly supported by evidence in the record as required by Local Rule 56(c) and because these have been introduced as part of a sham affidavit. See discussion above. Plaintiff's argument runs contrary to his deposition

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

testimony in which he admitted that the ELN constituted controlled documentation subject to applicable SOPs. See Docket No. 67-1 at p. 34. And, more importantly, there is no dispute that Plaintiff understood that he had to record the primary and raw data in the ELN contemporaneously to the time of occurrence pursuant to SOP-4204, SOP-4413, and SOP-4468. See Docket No. 67-1 at pp. 29, 44, 56-58.

Plaintiff's attempt to compare his situation with that of the other four reviewing employees to establish arbitrariness in his termination is also unavailing. Defendant argues that four other employees were disciplined—rather than terminated—for similar violations of the company's rules. Docket No. 52-1 ¶¶ 64, 65. However, the evidence establishes that these employees were not similarly situated to Plaintiff. Each of the four employees held the position of "second reviewing scientist," a role which was limited to reviewing the works of chemical analysts such as Plaintiff. Docket No. 52-1 ¶ 69. So, they did not actively engage in the violation imputed on Plaintiff: failing to register the data in a contemporaneous fashion as required by Defendant's protocols. In addition, the record reflects that, although these employees failed to verify each version of the ELN checklist saved by Plaintiff in their role as second scientist reviewers, each instance constituted a first offense for each of the four employees. Docket No. 52-1 ¶ 67, 69. Accordingly, the fact that these employees were suspended rather than terminated does not give rise to an inference of improper or inconsistent treatment or of lack of just cause for Plaintiff's termination. Plaintiff has failed to produce evidence that would materially dispute these distinctions or that would otherwise demonstrate that Defendant's justification for his termination was not supported by cause.

The undisputed facts ultimately establish that: (1) Defendant's rules were reasonable and necessary for its operations; (2) Plaintiff was aware of and trained in those rules; (3) he violated the clearly established rules through serious data integrity breaches; and (4) the decision to terminate his employment was grounded in legitimate business considerations rather than arbitrariness. Under these circumstances, Defendant has demonstrated that the undisputed facts establish just cause for Plaintiff's termination within the meaning of Law 80. Pérez v. Horizon Lines, 804 F.3d at 9. Courts will not second-guess the wisdom or business judgment of an employer's decision, so long as it is supported by a legitimate rationale. Cortés-Díaz, 2021 WL 4513714, at *11 (citing Villeneuve v. Avon Products, Inc., 919 F.3d 40, 48 (1st Cir. 2019)). Defendant's actions here fall squarely within that protected sphere. Accordingly, because no

Santiago-Ríos v. MSD International GmbH LLC
Civil No. 24-1170 (GLS)

genuine dispute of material fact exists, summary judgment in Defendant's favor is warranted. Pérez v. Horizon Lines, 804 F.3d at 12-13; Cortés-Díaz, 2021 WL 4513714, at *11 (granting summary judgment on Law 80 claim where employer made a showing of just cause based on uncontroverted facts).

## V.    Conclusion

For the reasons discussed above, Defendant's motion for summary judgment is **GRANTED**. Judgment will be entered dismissing with prejudice Plaintiff's claims under Law 80.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 30th day of March 2026.

s/Giselle López-Soler
GISELLE LÓPEZ-SOLER
United States Magistrate Judge